And may it please the Court, my name is Mark Caldwell. I'm appearing for Ms. Perez this morning in this Social Security appeal. I would like to try to reserve five minutes for rebuttal, and of course they will keep track of my own time. There are too many issues in this case, and it's nice if you can narrow them down, but there were just issues I couldn't walk away from. For purposes of this argument, though, I'd like to concentrate on Dr. Rooney, the treating physician, because obviously if we prevail on that issue, this is a matter that should be remanded for payment of benefits. Well, if it makes you feel any better, that's what I'd like you to talk about, too. Well, good. I'm glad I'm on the same page. So the Commissioner has characterized Dr. Rooney's assessment as being an assessment that would allow for sedentary work, and that's simply factually incorrect. I suppose you're right about that, and I think, you know, maybe you are. Why do we remand it for an award of benefits instead of reconsideration of her opinion, Dr. Rooney's opinion? Well, if it was a matter of reconsideration, I suppose every case would be remanded for further proceedings. It looks like the ALJ just ignored Dr. Rooney's assessment on that point that you're making. And, I mean, normally we would say go back and, you know, put that into the calculus. Under this Court's credit as true rule, the rule is that remand for determination of benefits is appropriate if there are no other issues that must be decided. Now, there are other issues that could be decided. There's all sorts of things that, you know, you could reconsider this and reconsider that. But once Dr. Rooney's assessment is accepted as a matter of law, that is facially inconsistent with even sedentary work, the lowest category of exertional requirements. And once that is accepted, there are no other issues that must be resolved. Well, but there is evidence that contradicts both Dr. Rooney and the plaintiff, isn't there? There is. There are other opinions in the record. There's more than opinions. There is evidence, as I read it, that would contradict both Dr. Rooney and the plaintiff. And so if there's evidence that contradicts both, it seems to me that even if we suggest the ALJ improperly discounted it, we should remand for a proper credit and resolution of the conflicts. A helpful case in that regard is this Court's Orn O.R.N. decision. I know that case. And in that case, it's somewhat similar to this case. There was a consultative examination, and the Commissioner argued that that was substantial evidence. And this Court said, no, it's not substantial evidence because there were no independent findings, and the independent findings have to be one of two things.  But we don't have that here. We have a situation where, if I swallow your argument that Dr. Rooney's evaluation was not talked about or was not even mentioned or was discounted without a proper basis, we nonetheless have evidence that contradicts both. But the question becomes, is that substantial evidence that contradicts the treating physician's opinion? Well, who else? I mean, that's the ALJ to decide in the first instance, isn't it? This Court didn't feel that way in Orn. I don't know about Orn, but I mean, normally the ALJ would look at what the treating doctor says, compare it to the other doctors and say, I accept it or I reject it for these reasons here. It looks like the judge just ignored it, as far as I can tell. Let me be more clear about that, because we really have three opinions from Dr. Rooney. We have the physical exertional requirements assessment, sit, stand, walk, lift. We have the pain assessment, moderately severe pain that seriously affects ability to function. And then we have the mental capacities assessment that includes a marked limitation in the ability to complete a normal workday and workweek. It's only those latter two that the ALJ ignored. But the ALJ specifically considered the first, the less than sedentary exertional requirements, and gave insufficient reasons for rejecting that assessment. Well, I guess I'm going to take it a little bit further, because I've got concerns that go a little bit further than that. You're not maintaining that the ALJ didn't read the whole report, right? I don't know. Well, it's all right. Well, all right. That really probably to me is not really a very logical conclusion when they look at a report, that I'm only going to read pages one, two, and five, or something like that. I mean, I've been a judge for a long time. And if you look at a report, you generally, you just don't read part of it, or, you know, read the first sentence and read the last sentence and then consider it. I have additional concerns about that Dr. Rooney may be the treating physician for the physical part of it, does say something about the mental part of it, but the cases that you cite are people that are giving psychotropics to people as far as that goes. You know, I'm not, you know, I stayed at a Holiday Inn Express, and, you know, that's my expertise in mental health. But I can spot when someone's depressed or any number of things as, and probably a doctor could a little bit more. But I don't see that as logically necessarily saying that he's a treating physician on the mental health issues. Then part of the other way that I'm looking at it is there are other people that have considerably more expertise in the area of mental health that do look at your client. And I'm not sure that Dr. Rooney said anything that different than what the other one said, so I'm wondering why it, you know, that implicitly the ALJ didn't look at everything, and implicitly the ALJ was sort of factoring in. Your best argument to me might be that the ALJ didn't specifically say, what's the combined effect of the physical and the mental, because that was the person that saw the physical and the mental. But, you know, I don't, I just, I'm having a hard time seeing why it wouldn't all be harmless error at the end of the day. Okay. I know, there's a lot of things there, but I'm just telling you all my concerns. You know, I know what the record says in terms of what the ALJ didn't say, but I'm just wondering that if this is not a distinction without a difference at the end of the day. Okay. Let me go through my checklist of the things you've said to me. First of all, what you started off with was a very logical statement that obviously a judge doesn't read the first page and the last page of a report and ignore everything in between. We don't have that. We have three separate assessment forms. It's not like it's all one document that the ALJ skipped around in. So it's entirely logical to believe that he didn't consider the pain form and he didn't consider the mental form. The second point is, I believe you said you didn't believe that there was a difference in the opinions on the mental. I will respectfully disagree. Dr. Rooney said there was a market, that's the most severe category on that assessment, a market limitation in the ability to complete a normal work day and work week. The other professional, of course, is Dr. Herdes, the psychologist. And Dr. Herdes had nine moderate limitations. Now, the mistake, I know this is de novo review, but the mistake the district court made there was the district court said, well, that's not entirely precluded, so, therefore, this person can work. And that isn't how it operates. If there are numerous, I'm sorry. Go ahead. You didn't have her question quite answered, evidently. If there are numerous moderate limitations, the question becomes, what is the cumulated impact of that on the ability to sustain work-related activities on a regular and continuing basis? Judge Smith. Well, my worry is somewhat similar to my colleague's worry in that Dr. Rooney was really not the primary care physician for mental problems. Well, I agree with that. He was, in fact, or she, sorry, was, in fact, the primary care physician for physical problems. And, therefore, to the extent that Dr. Rooney addresses the mental problems, she only addressed them as they related to the physical disability. So the ALJ properly responded to Dr. Rooney's opinion as to the physical stuff. And to my, I guess I'm trying to figure out what best case do you have that I am supposed to give some consideration to his mental effect on the physical limitation, which was what she was really looking at, that says he's got to address that. Because he, the ALJ, sufficiently addressed the physical limitations, said why the opinion did not seem to be something that the ALJ would rely upon. And anything that had to do with the mental was not anything that Dr. Rooney had anything to do with. She was only evaluating the physical. Well, I have two answers. The first answer is I respectfully disagree with your judgment regarding whether the ALJ gave sufficient reasons for rejecting Dr. Rooney's opinion. Well, I understand that. But if I get to that point, okay, you've got me there. But if I get to that point and I say that it was sufficient, then why is not the whole thing out? Okay. Then you asked me that second part of your question. And the case you want to look at is Lester v. Chater. Well, I did look at Lester. And I know what Lester's about. And I know Judge Reinhardt wrote the opinion. And frankly, Lester is not about this situation. Lester is about a treating physician who says what he thinks based on tests, and then because he also gave some subjective thoughts about that test, Judge Reinhardt says you've got to put those down as much as the tests. That isn't here. What we've got here is we have an opinion by a physician about something the physician is requested to treat about, for which they add a few mental impressions to suggest physical is bad, and then the ALJ concentrates on whether I should adopt the physical limitations or not and says what the ALJ has to say and what you're now suggesting is that I'm to look at Lester and say, oh, just because he put in something about mental, I'm supposed to automatically suggest that the ALJ has got to respond to that, too. Let me answer his question, then you're into your reserve time. Yes, I am. I think Lester isn't as distinguishable as you seem to think it is because Dr. Rooney said in one of her assessments that she, this woman, is severely debilitated by a multitude of impairments and then said, and those impairments dovetail with the physical part. But here's the other thing that's important, and I do want to try to reserve some time. Here's what's important about the mental part. That form that Dr. Rooney filled out about mental limitations, the Social Security Administration sent Dr. Rooney that form. That's an agency form. That didn't come from my office on behalf of the claimant. The agency asked Dr. Rooney. If the agency asked Dr. Rooney, and I think that's pretty strong evidence that that is an opinion that the agency thought was credited, may I reserve my remaining time? Yeah, you can, but I want, there's a question I want you to think about and answer when you come back, is that if the ALJ ultimately found that Perez was restricted to simple, unskilled work, Dr. Dalton, the only mental health physician to address this issue, thought that she could perform semi-skilled work. So that tells me that the ALJ took into consideration what Dr. Rooney said. So you can answer that when you come back. Thank you. Good morning. Good morning. I'm Dan Rose. I'm a Special Assistant U.S. Attorney for the District of Arizona. I represent an agency in this case. We spent a lot of time when my colleague was up here talking about Dr. Rooney's opinion, but I think before we can talk about Dr. Rooney's opinion appropriately, we have to talk about what standards this Court has to apply to the ALJ's decision in assessing Dr. Rooney's opinion. In the briefs, this is where we talk about the Bonnell decision, the En banc decision, as opposed to the panel decisions that are applying a different standard for the type of reasons that an ALJ has to give. So in Bonnell, the Court says the reasons have to be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds, did not arbitrarily discredit a claimant's testimony regarding pain. That's what this Court, sitting en banc, has said. However, there are a host of panel opinions that apply a completely different standard to what the ALJ does, that the ALJ must give clear and convincing reasons. Now, our position, which we argue in the brief, is that those clear and convincing reasons cases are contrary to Bonnell. They're applying a different standard, and because Bonnell's an en banc case, this panel's bound to apply that as opposed to clear and convincing reasons. But let me ask you this. Is it true that the agency sent Dr. Rooney a form asking for Dr. Rooney's opinion of the claimant's mental status? I'm not sure about the answer to that, Your Honor. I mean, that happens in some cases. It may have happened in this case. I'm not certain what the record says. It looks like it happened. Counsel says it happened. I have it in front of me, and it looks like. Yeah, I'm not going to contest that necessarily. Okay. So then let's take that as a given. Okay. Dr. Rooney then fills out this form and opines that depression definitely limits her abilities. She's markedly limited due to depression, which exhibits itself in several ways, including work pace and duration and other things. This is in front of the ALJ, and the ALJ makes no comment on it one way or the other, as far as I can tell. You're talking about the pain questionnaire itself? Medical source statement of ability to do work related to activities per-en-mental is the name of this document. Oh, okay. You're talking about the mental opinion, the one from. . . From Dr. Rooney. It's from the September 2007 opinion. I think there's two different ones. Right. Okay. So the September 2007 opinion. . . There's no reference to this in the ALJ's. . . Right. I would admit that the ALJ could have been clearer about this. Do you admit that it was not mentioned at all? Well, I think it's ambiguous whether it was mentioned at all. He certainly didn't list exactly what Dr. Rooney said, but he mentions Dr. Rooney's opinions, generally, plural, lists off some of the characteristics of the opinion regarding physical things, and then lists off the reasons that he's discounting it, all of those reasons which could apply to the mental. . . Well, when the ALJ discusses the mental part of the case, there's no reference to Dr. Rooney, as I understand it.  My point is that it's. . . Doesn't the ALJ have a duty to, if you're going to reject Dr. Rooney's mental opinions, to explain why? Yes, but I think the ALJ does that. And I think even if the ALJ did it inadequately, it's harmless. So are you suggesting then that our cases that say the opinion of the treating physician can only be rejected after setting forth specific and legitimate reasons for doing so, that that language is applicable to Dr. Rooney's opinion about mental? Right. And specific and legitimate, as far as the agency is concerned, is just a gloss on what the regulation says, which the regulation says he must give good reasons. We don't have a problem with specific and legitimate. We just think that that's the standard that should apply. Do you believe that Dr. Rooney was a treating physician for mental? I mean, that's what the rule says. Dr. Rooney. . . I mean, that's why I was questioning the way I was. I was trying to make sure, because that seems to me to be a crux issue. Right. Dr. Rooney did, it seems, treat her in some sense, some vague sense. But it wasn't anything psychologically specific. She's clearly not a psychologist or a psychiatrist. She's a generalist, right? Yeah. I think that's right. Well, she didn't give any, she didn't give psychotropic drugs to her. She wasn't giving medication, right? That's correct. I mean, she was giving medication for physical things. That's correct, Your Honor. Well, see, if Dr. Rooney's report had been the only one about mental health, would that be enough for her to, for a court, would she have qualified as an expert in that area? You mean like in a civil case? Well, no, in this particular case. If she was claiming that, you know, would you have argued that, well, Dr. Rooney isn't. . . Well, the regulations require the agency to take into account all opinions it receives. That includes lay opinions. That includes statements of the claimant's, you know, spouse, all sorts of things. But not all of those opinions need to be listed and specifically commented upon. That's correct. And that's what we're worried about here. Right. And how much weight to apply to them is, you know, handled by 404, 1527 and similar regulations. So it should be considered within that whether it has to be mentioned and discussed explicitly is a separate question. Well, but if it's treating physician, then we're dead. That's why I asked you the question. I mean, I don't think that Dr. Rooney, she's a treating physician in a general sense. But as to what she was treating, it was not really the mental, any sort of mental limitations. In fact, the plaintiff received hardly any treatment for any mental impairment at all from any doctor whatsoever, which is one of the reasons ALJ discounted her credibility as to the severity of that impairment. So I think you're right. Make your harmless error argument on this in terms of if let's just, if we give Perez the benefit of all of that, what is your best harmless error argument on this? And I had asked counsel for the, for Perez to say that the, ultimately it was found that, I think I made the comment about, it appears that Dr. Rooney could have been incorporated in there because of the type of work that she was said she could do. Right. Unskilled work, correct? Yeah. And I think that probably is the best harmless error argument is that even though, even if the ALJ didn't mention it, even if the ALJ didn't consider it at all, the ultimate conclusion on a residual functional capacity was more deferential to the claimant's subjective complaints and more deferential to what Dr. Rooney thought than any of the other doctors who had opined on that, that the ALJ did explicitly mention. And the other doctors, did any of them say just unskilled work? No, they said semi-skilled work. And the ALJ went with unskilled work. Right. Which I think is a natural conclusion from weighing various bits of, you know, often conflicting evidence that you're going to come up with something that no one has explicitly said. There's no requirement that they, that the ALJ pick one doctor's opinion and adopt just that doctor's opinion over other doctors' opinions. I mean, it's a weighing of evidence. The truth might be somewhere in the middle. But ultimately, I think if you. Was Dr. Rooney the only one that technically saw her for the breadth of mental and physical? I believe so. Another doctor is not coming to mind. And certainly it's the only doctor who treated her in any sense who offered an opinion in this case. The rest of the doctors examined her but didn't have any sort of treating relationship or just reviewed her medical records. Let me ask you this. If you buy the premise that you have to credit Dr. Rooney, then does there not have to be a residual functional capacity assessment that takes into account what Dr. Rooney said? Just to clarify, you're referring to the credit as true rule, or credit Dr. Rooney's opinion as true, or do you mean that? Credit as true, let's assume for the sake of discussion. She says the lady is basically markedly disabled. If that's true, then she can't necessarily do the unskilled work without getting a vocational assessment of what. Yeah, I think that's correct. Even if you do credit it. I mean, at today's you see challenges. Credit is true in every single case where it comes up for a long time. But even if you do credit that as true, I don't think there's any way you can determine on the record, because it's currently before the court, that she's disabled. There has to be some vocationalized testimony. And Mr. Caldwell's suggestion that we just return it for award of benefits versus for further development. I don't think you can reasonably do that on the record. Do what? Return it solely for award of benefits. Even if you remand it or overturn the ALJ's decision, this has to receive further consideration, because there's simply not enough evidence. The ALJ decided that, I mean, disability is not a matter of just possessing some physical characteristic that therefore makes you disabled. It's different from like a VA system. There are steps in the agency's determination where you can do that, but we're well past that in this case. You have to have some assessment of how those limitations affect you in the workforce. In this case, the ALJ didn't really have a vocational expert opinion on that, because he used the grids or the guidelines for vocational issues and determined that she could still work. Now, if the RFC changes from what it is now, the grids are not going to be appropriate anymore, and you're going to have to have some sort of vocational expert testimony on that issue. So even if you find an error here, it has to be remanded for further proceedings, not for repayment of benefits. Gotcha. If you ‑‑ it seems to me that the only way I can really get to harmless errors if I find that the ALJ properly rejected the Dr. Rooney's physical RFC, wouldn't you say? That's probably correct, yeah. It wouldn't be an error at all, then, if she properly rejected it. Well, you would find an error elsewhere in the case. The way I understand your question is that that particular asserted error, if it is an error, is not harmless. That's probably correct, but again, it would just lead to a remand for the payment of benefits. And I think this is a case where it really is important, whether we're using a clear and convincing or the Pinnell standard on that particular issue, because unlike a lot of cases where they say, well, even if we assume that clear and convincing is the standard, these meet that. I think in this case, admittedly, these might be on the line between those. I think if it's just specific and legitimate or if it's just good reasons, these meet that standard. They probably don't meet clear and convincing. Although, I mean, there are cases where these particular reasons have been found to meet that, but we'll admit that the ALJ's opinion is not super clear on this particular point. I went back. A model of clarity is the work of art. That's correct, yes, Your Honor. I went back because I was curious to try and find where clear and convincing reasons came from. And the genesis of it is actually much older than I had expected. It's from a case in 1975. It's the first time I can find this court use that phrase. It cites two other cases for the proposition, but neither of those cases actually use the phrase clear and convincing. It's Day v. Weinberger, 522 F. 2nd, 1154. At that time, 404 or 1527 did not exist in its present form. So there was no regulatory requirement for good reasons. That came about in 1991. So clear and convincing reasons predated that considerably. And a lot of the other circuit courts as well had what they called the treating physician rule, most of which is embodied in 404, 1527 and its Title 16 counterpart. But the Second Circuit especially has clearly recognized that bringing 404, 1527 into existence modified all those previously existing rules. This Court hasn't really addressed that point. But I do point out that the Bonnell panel, prior to the en banc decision, did use a clear and convincing standard. And then when you go to the en banc court, they didn't use a clear and convincing standard. And they cite 404, 1527. And they give this what's essentially specific and legitimate, if you put it in a shorthand, and it's essentially a gloss on the regulatory requirement. So I think that's the standard that this Court is required to use, both due to the regulation and due to this preexisting en banc decision. But don't you really believe that your argument would really require me to say, well, let's go en banc on this? Because we've had undue three judge panels. I did the same research you've done. We've had undue. I mean, I can't even number them. I guess I could if I went down and counted them. But they'd say clear and convincing reasons. That's absolutely true. And therefore, since Bunnell of 1991 to today, we've had all this precedent that says this is our standard. I'm thinking if I adopt what you want me to do, I've got to say, well, let's go en banc to clarify this. I don't think that this panel, as good as those two are, they've got one yay-hoo here, could do that. Your Honor, I don't think that's true. I mean, the en banc case says what the en banc case says. If there was contrary Supreme Court precedent, you'd have to follow that, too, regardless of what some intervening panel who hadn't really addressed the question at all said. Okay, I see you're over time, Mr. Burris. Thank you very much. Mr. Caldwell, you get the last word. Thank you, Judge. Judge Callahan, you were talking about skill levels. The ALJ said unskilled. The non-examining state agency reviewer said semi-skilled. The point I want to make very strongly here is skill levels are irrelevant. The guy who pushes the broom down that hallway has to do it eight hours a day, five days a week, has to complete a normal work day and a normal work week without an unreasonable number of interruptions. And that's exactly what Dr. Rooney said Ms. Perez can't do. It doesn't make any difference. This whole business about unskilled work and translating the limitations into skill levels is, frankly, a red herring. The other point that the commissioner made is an emphasis on vocational expert testimony. And I think that's also an error. If you want me to, we can have another hearing and I can ask the vocational expert, can somebody who can't sustain work sustain work? I think we're wasting our time and certainly putting Ms. Perez through the bureaucratic wringer by forcing her to go through further administrative proceedings for that reason. Once we look at the... The judge has to properly formulate the hypothetical. I mean, if the judge finds that she has these limitations, then that goes to the hypothetical that's asked. The judge may or may not decide on remand to credit Dr. Rooney's opinion. I personally think maybe she ought to be given the chance to accept it or reject it. But that's it. I think it's... Next question. As a practical matter, I'm speaking on a personal level here, that's awfully hard on Ms. Perez. She's been going through this for years. The ALJ completely, 100 percent ignored this important evidence. To ask somebody to wait years and years because the ALJ absolutely ignored the evidence is... Let me ask you this real life question. How long is it? Just for the sake of argument, since I don't know the answer administratively. Let's suppose we did the remand for a hearing. How long does that take, just so we know what we're dealing with here? I'm going to ballpark it here. Probably over a year. Because, you know, it goes from here, goes to the district court, goes to the appeals council, all those issue orders. And then it gets back in the queue at the hearings office. And right now at the... We could make it over right here in a firm. Well, I'd rather you didn't do that. That's what I thought. I see you're out of time as well. I am. Well, thank you very much, Mr. Burroughs. Thank you, too. The case to start, you just submitted.
judges: Silverman, Callahan, Smith